THE UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSAA GENERAL INSURANCE COMPANY | : |
| Plaintiff(s), | : Civil Action No. _____ |
| v. | : |
| FOX DEVELOPMENT GROUP, LLC and ALEX FOX | : |
| Defendant. | : |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff CSAA General Insurance Company ("CSAA"), by and through its counsel, Rebar Bernstiel, hereby files this action seeking declaratory relief pursuant to 28 U.S.C. § 2201, and alleges in support thereof the following:

**THE PARTIES**

1. Plaintiff CSAA is a corporation organized and existing under the laws of the State of California with its principal place of business at 3055 Oak Rd., Walnut Creek, CA.

2. Upon information and belief, Fox Development Group, LLC ("Fox Development") is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Huntington Valley, Pennsylvania.

3. Upon information and belief, Alex Fox is an adult citizen and resident of the Commonwealth of Pennsylvania.

**NATURE OF THE ACTION AND RELIEF SOUGHT**

1

4. This is an action for: (a) a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.; and (b) other relief.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201 because there is a real, substantive and justiciable issue in controversy between the parties to this action with respect to the existence of insurance coverage under a policy of insurance issued by CSAA to Mr. Fox. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because CSAA has no adequate remedy at law which will resolve the current controversy.

6. This declaratory judgment action arises out of a defective workmanship lawsuit filed against Mr. Fox and Fox Development in Pennsylvania state court under the caption, *Frank Bezotsky V. Fox Development Group, LLC and Alex Fox*, Philadelphia CCP, January Term 2018, No. 2956 (the "Liability Litigation").

7. A true and correct copy of the Complaint filed in the Liability Litigation (the "Liability Complaint") is attached hereto as exhibit "A."

8. CSAA seeks a declaration that the terms of the Policy do not obligate CSAA to pay defense or indemnity to Mr. Fox or Fox Development for any sums that either may become legally obligated to pay with respect to the claims brought by Mr. Bezotsky in the Liability Litigation.

9. A true, correct, and complete copy of the CSAA Policy, policy number PAD3-205398494 (the "Policy"), is attached to this Complaint as Exhibit "B."

## JURISDICTION AND VENUE

10. This court has jurisdiction over this action pursuant to the provisions of 28 U.S.C §1332, by virtue of the diversity of citizenship of the parties, and because the amount in controversy, exclusive of interest and costs, is alleged to be in excess of $75,000.

11. Venue is proper in this district pursuant to 28 U.S.C. §1391 (a) (2), as a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically, the Policy under which the coverage questions are presented was issued to Mr. Fox in Pennsylvania, and the properties giving rise to the claims by Bezotsky against Mr. Fox and Fox development are located at 2421 East Cumberland St. (the "Fox Property") and 2419 East Cumberland St. (the "Bezotsky Property") in Philadelphia, Pennsylvania.

## FACTUAL BACKGROUND

12. Fox Development owns a property located at 2421 East Cumberland St. in Philadelphia, Pennsylvania (the "Fox Property"). *See* Exhibit "A," ¶ 9.

13. Upon information and belief, Mr. Fox is not the record owner of the Fox Property and has no insurable interest in the Fox Property.

14. At all times material to the claims at issue any liability litigation, Mr. Fox acted as an agent, servant, workmen and/or employee of Fox development. *See* Exhibit "A," ¶ 3.

15. Upon information and belief, Fox Development undertook the responsibility of renovating the Fox property. *See* Exhibit "A," ¶ 12.

16. Upon information and belief, Fox development acted as the general contractor in connection with the renovations performed at the Fox property. *See* Exhibit "A," ¶ 13.

17. Upon information and belief, Fox Development supervised and/or was responsible for removing a 275-gallon heating oil storage tank from the Fox Property's basement as part of the buildings renovations. *See* Exhibit "A," ¶¶ 14 – 16.

18. According to the Liability Complaint, Number 2 heating oil leak from the storage tank during the removal process, which oil seeped through the party wall separating the Fox

Property from Bezotsky Property and entered the crawlspace and ground beneath the concrete basement floor. *See* Exhibit "A," ¶¶ 18, 20 – 21.

19. The 2419 East Cumberland St. was owned at all relevant times by Frank Bezotsky.

20. The Liability Complaint also alleges that the number 2 heating oil and its fumes contaminated the Bezotsky property, its contents, and ultimately rendered the Bezotsky property uninhabitable. *See* Exhibit "A," ¶¶ 22 – 23, 25.

21. Upon information and belief, Fox development subsequently retain Superior Tank and Energy Company to mitigate the oil to the Fox Property. *See* Exhibit "A," ¶ 26.

22. Upon information and belief, Superior Tank removed 6.54 tons of compacted soil from the Fox Property's basement.

23. Upon information and belief, Mr. Fox placed boxes of mothballs in the Fox property in an effort to mask the heating oil's smell. *See* Exhibit "A," ¶ 28.

24. Mr. Bezotsky also claims that his property sustained additional contamination as a result of the odors from the mothballs. *See* Exhibit "A," ¶ 29.

25. In paragraphs 31 and 32 of the Liability Complaint, Mr. Bezotsky further claims that he retained JK environmental services to assess the indoor air quality at his property, which company determined that concentrations of carcinogenic compounds existed that exceeded the applicable Pennsylvania Department of environmental protection limits. *See* Exhibit "A," ¶¶ 31-32.

## THE CSAA POLICY

26. CSAA is a personal lines insurance carrier that is authorized to issue policies of insurance in the Commonwealth of Pennsylvania, CSAA does not issue *commercial* insurance policies to businesses or commercial entities.

27. On September 15, 2016, Mr. Fox signed an application submitted to CSAA seeking a rental property insurance policy for the Fox Property.

28. Mr. Fox held himself out as the owner of Fox Property when he submitted his application to CSAA, he never disclosed to CSAA that Fox Development owned the Fox Property.

29. CSAA relied on Mr. Fox's representations in his application when it issued the Policy.

30. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in "bodily injury" or "property damage." *See* Exh. "B," at p. 9.

31. The Policy defines "contamination" as "any impairment or impurity due to an accidental or intentional mixture of, or contact with, any foreign substance. This includes but is not limited to, biological, chemical, or toxic agents. 'Contaminant' refers to the foreign substance that causes the impairment or impurity."

32. The Policy defines "fuel system" as:

    **a.** One or more containers which have a total combined storage capacity of 100 or more U.S gallons of liquid fuel; and

        **(1)** Are, or were, located on any single location covered by this policy; and
        **(2)** Are, or were, used to hold liquid fuel that is intended to be used for one or more of the following:
            **(a)** To heat or cool a building;
            **(b)** To heat water;
            **(c)** To cook food; or
            **(d)** To power motor vehicles, other motorized land conveyances, aircraft, hovercraft or watercraft owned by any resident of the "described location";

    **b.** Any one or more of the following when used with or connected to one or more containers listed in paragraph **15.a.**:
        **(1)** Any pump, including its motor, gauge, nozzle, hose or pipes;
        **(2)** Filler pipes or flues; or
        **(3)** Any boiler, furnace or water heater, and their fittings and pipes; or

      c. Any container intended to hold the liquid fuel that escapes from one or more of the items listed in paragraphs **15.a. or 15.b.**

See Exh. "B," p. 7-8.

33. The Policy defines "pollutants" as any solid, liquid, gaseous, or thermal irritant, "contaminant" or toxic substance, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

34. The Policy, in pertinent part, contains the following provisions in the Insuring Agreement:

### SECTION II – EXCLUSIONS

\* \* \* \*

E. **Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

\* \* \* \*

14. **Pollution**
    a. "Bodily injury", or "property damage" due to the actual, alleged or threatened release of "contaminants" or "pollutants". Release includes any dispersal, discharge or escape. This Exclusion **14.a.** does not apply if such release is sudden and accidental.
    b. Statutory liability of any "insured" in any matter due to "contaminants" or "pollutants";

\* \* \* \*

F. **Coverage E – Personal Liability**

Coverage E does not apply to:

\* \* \* \*

10. "Bodily injury" or "property damage" caused by or involving the escape of fuel from a "fuel system".

See Exhibit "B," p. 56 & 59.

### COUNT I – DECLARATORY JUDGMENT: NO OCCURRENCE FOR PROPERTY DAMAGE CLAIMS

6

35. CSAA incorporates its allegations in paragraphs 1 through 34 as if fully set forth at length herein.

36. The crux of the Liability Complaint all arise out of the faulty workmanship allegedly performed by or at the direction of Mr. Fox and/or Fox Development.

37. The CSAA Policy conditions liability coverage for "property damage" on the existence of an "occurrence."

38. The faulty or defective manner in which Mr. Fox and/or Fox Development removed and/or directed the removal of the storage tank and/or utilized the moth balls were not fortuitous events within the meaning of an "occurrence" under the Policy.

39. Oil leaking from an improperly removed a 275-gallon heating oil storage tank is a natural and foreseeable result such that the damages resulting from such improper workmanship is not an accident and, therefore, does not trigger liability coverage for the claimed "property damage" under the Policy.

40. CSAA therefore has no obligation to defend or indemnify Fox or Fox Development in connection with the Liability Litigation.

WHEREFORE, CSAA General Insurance Company respectfully requests judgment in its favor and against Defendants and further request that this Honorable Court:

   (a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Alex Fox or Fox Development in the litigation *Frank Bezotsky V. Fox Development Group, LLC and Alex Fox*, Philadelphia CCP, January Term 2018, No. 2956;

   (b) For those costs incurred pursuant to law; and

   (c) For such other relief as is just and equitable herein.

**COUNT II – DECLARATORY JUDGMENT: POLLUTION EXCLUSION**

41. CSAA incorporates its allegations in paragraphs 1 through 40 as if fully set forth at length herein.

42. The CSAA Policy removes liability coverage for "property damage" due to the actual, alleged or threatened release of "contaminants" or "pollutants."

43. The Number 2 fuel oil that leaked into and damaged the Fox Property and Bezotsky Property qualifies as a pollutant and/or contaminant.

44. Upon information and belief moth balls contain high concentrations of either naphthalene or paradichlorobenzene and are intended to kill clothes moths when trapped inside sealed containers.

45. The mothballs that Mr. Fox placed in the Fox Property that allegedly contaminated the Bezotsky Property qualifies as a pollutant and/or contaminant.

46. CSAA has no obligation to defend or indemnify Mr. Fox or Fox Development in connection with the Liability Litigation since the Number 2 heating oil and moth balls qualify as pollutants and/or contaminants which the Policy excludes.

WHEREFORE, CSAA General Insurance Company respectfully requests judgment in its favor and against Defendants and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Alex Fox or Fox Development in the litigation *Frank Bezotsky V. Fox Development Group, LLC and Alex Fox*, Philadelphia CCP, January Term 2018, No. 2956;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein.

### COUNT III – DECLARATORY JUDGMENT: FUEL SYSTEM

47. CSAA incorporates its allegations in paragraphs 1 through 46 as if fully set forth at length herein.

8

48. The Policy removes coverage for "property damage" caused by or involving the escape of fuel from a "fuel system."

49. The 275-gallon heating oil storage tank that Defendants removed from the Fox Property qualifies as a "fuel system" as defined by the Policy.

50. CSAA has no obligation to defend or indemnify Mr. Fox or Fox Development in connection with the Liability Litigation for any loss or damage caused by the number 2 heating oil leaked from the 275-gallon heating oil storage tank that Defendants removed from the Fox Property.

WHEREFORE, CSAA General Insurance Company respectfully requests judgment in its favor and against Defendants and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Alex Fox or Fox Development in the litigation *Frank Bezotsky V. Fox Development Group, LLC and Alex Fox*, Philadelphia CCP, January Term 2018, No. 2956;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein.

REBAR BERNSTIEL

BY: _____
C. Scott Rybny, Esquire
Attorney I.D. No. 84710
470 Norristown Rd, Suite 210
Blue Bell, PA 19422
(484) 344-5340
Fax: (484) 344-5341
srybny@rebarbernstiel.com

**Date:** 8/1/18